IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Green Ventures International, LLC, | ) | |
| Partnership, | ) | Civil Action No.: 2:10-CV-01709-MBS |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Peter J. Guttridge; Vinay Bharathwaj; | ) | |
| Innoven Partenaires, S.A.; and Innoven | ) | |
| Partners, LLP, | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Green Ventures International, LLC filed the within action on July 1, 2010 alleging causes of action against Defendants Peter J. Guttridge ("Guttridge"); Vinay Bharathwaj ("Bharathwaj"); Innoven Partenaires, S.A. ("Innoven Partenaires")[1]; and Innoven Partners, LLP ("Innoven Partners") for :1) breach of contract; 2) breach of fiduciary duty; 3) fraudulent inducement and fraudulent concealment or constructive fraud; 4) conversion; 5) accounting; 6) aiding and abetting/ principal agent; 7) judicial or equitable dissolution of Defendants' illicit business ventures; and 8) injunctive relief. On August 12, 2010, Defendants Gittridge, Bharathwaj, and Innoven Partners filed a motion to dismiss. On August 30, 2010, Plaintiff responded to the motion to dismiss. On September 2, 2010, Plaintiff filed an amended complaint.[2] The amended complaint alleges the same causes of action against the same Defendants as the original complaint, but adds a claim for civil conspiracy. On September 10, 2010, Defendants filed their reply with regard to the August 12, 2010 motion to dismiss in which they conceded that the amended complaint rendered the

_____

[1] Innoven Partenaires had not yet been served at the time of the hearing on Defendants' motion to dismiss the amended complaint. The term "Defendants" hereinafter refers to all defendants except Innoven Partenaires.

[2] This filing came before the twenty-one day deadline set out by Federal Rule of Civil Procedure 15(a)(1)(B) for amending as a matter of course.

motion to dismiss moot.

This case is currently before the court on Defendants Guttridge, Bharathwaj and Innoven Partner's motion to dismiss Plaintiff's amended complaint, which was filed on September 20, 2010. On October 7, 2010, Plaintiff responded. On October 18, 2010, Defendant replied.

## FACTS

The facts as alleged in the amended complaint are as follow. Plaintiff is a New York corporation that conducts business in South Carolina and other locations in the United States. Amend. Compl. ¶ 1. Plaintiff also conducts business in India and other foreign countries through its subsidiaries and affiliated entities. *Id.* Plaintiff alleges that it "holds title and/or the right to possession of certain intellectual properties including, but not limited to, software, web technologies, and/or web-based solutions and other products developed by Krish Krishnan, who granted to [Plaintiff] the right to use these intellectual properties for its benefit and to further its purposes." Amend. Compl. ¶ 63.

Innoven Partenaires is a French investment firm that invests in other companies through its subsidiaries and affiliates. Amend. Compl. ¶¶ 4, 8. Innoven Partners is a British entity that is affiliated with Innoven Partenaires. Amend. Compl. ¶ 5. Guttridge, a British citizen who is a licensed financial brokerage professional, is a principal of Innoven Partenaires. Amend. Compl. ¶¶ 2, 8-9. Bharathwaj, a citizen and resident of India, was an employee and director of Plaintiff. Amend. Compl. ¶¶ 3, 22.

In February 2008, Innoven Partenaires and/or its affiliates invested $1,586,653.56 in Plaintiff by and through Guttridge, and Guttridge, pursuant to a brokerage fee arrangement, received ten percent of those funds as payment for his investment agent services. Amend. Compl. ¶ 11. Innoven

Partenaire's investment in Plaintiff was conditioned upon Guttridge being appointed to Plaintiff's board of directors. Amend. Compl. ¶ 13-14. Since his appointment to Plaintiff's board, Guttridge has been involved in Plaintiff's management and has been "privy to . . . confidential and proprietary information." Amend. Compl. ¶ 21. Guttridge continues to serve on Plaintiff's board. Amend. Compl. ¶ 7.

In March 2009, Guttridge attended the "Green Ventures Investors Summit" in Kathmandu, Nepal and met Bharathwaj. Amend. Compl. ¶¶ 3, 22. Bharathwaj "solicited Guttridge's participation and assistance in a scheme of business opportunities while both were formally affiliated with [Plaintiff], and the purpose of these business opportunities, [was] to directly conflict with the [Plaintiff]'s corporate opportunities . . . and to misappropriate intel[l]ectual property and corporate oppor[t]unities." Amend. Compl. ¶ 25.

Beginning around May 2009, Guttridge began to advocate for the dissolution of Plaintiff. Amend. Compl. ¶ 23. Guttridge's actions "coincided" with discussions with Bharathwaj regarding "the intentional and premeditated conversion of [Plaintiff]'s finances, intellectual property, and other corporate property, as well as corporate opportunities . . . in order to establish and promote an enterprise known variously as 'GreenSoft Technologies;' 'GreenNext Technologies;' and 'Confluenze Business Consulting' (hereinafter collectively referred to as the 'Confluenze Enterprise')." Amend. Compl. ¶¶ 24, 26. Plaintiff alleges that "Defendants combined, conspired, and otherwise associated as memebers [sic] of the Confluenze Enterprise." Amend. Compl. ¶ 27. More specifically, Plaintiff alleges that Guttridge, Bharathwaj, and Innoven Partenaires and Innoven Partners, by and through Guttridge, while Guttridge and Bharathwaj were affiliated with Plaintiff:

> began to electronically communicate with third-party individuals and/or entities
> (including, but not limited to: Green Power Funding Group; John Cravenho; Power

Management Concepts; Eduardo Browne; Carbon Trade Xchange; Steve Harrison; Carrie Howes; Proactive Investors; Sequoia Capital; Jeffrey Henslin; IBM PartnerWorld; and HughesNet) for the purpose of defrauding [Plaintiff] and these third-party individuals to enhance the Confluenze Enterprise for the monetary benefit of the Defendants to the detriment of [Plaintiff].

Amend. Compl. ¶ 28; *see also* Amend. Compl. ¶ 29, Ex. O. Plaintiff alleges that Defendants have "electronically communicated with a number of investors and business contacts of [Plaintiff] in order to fraudulently promote, conduct and participate in [the] Confluenze Enterprise. . . ." Amend. Compl. ¶ 34. Plaintiff alleges that Defendants did not disclose their actions to Plaintiff and instead "actively and intentionally concealed" these actions. Amend. Compl. ¶ 30. In May 2009, Bharathwaj was dismissed from his position with Plaintiff for misconduct related to his involvement with the Confluenze Enterprise. Amend. Compl. ¶ 33.

Plaintiff contends that Defendants' actions "have directly caused, and are continuing to cause, losses and other damages to the financial condition and reputation of [Plaintiff], and as part of the natural, ongoing and regular method of business for the Confluenze Entprise [sic], threaten the unbridled continuation of the Defendants' violation of 18 U.S.C. § 1343, § 1961(1)(b), and § 1962(c)." Amend. Compl. ¶ 34

Plaintiff's civil RICO claim, as set out in the amended complaint states as follows:

**<u>For a First Cause of Action</u>**
**(Conduction and Participation of a RICO Enterprise Through a Pattern of Racketeering Activities: 18 U.S.C. § 1961(1)&(5), § 1962(c))**

38. [Plaintiff] repeats and realleges the preceding paragraphs as fully as if set forth herein verbatim.

39. At various time [sic] and places enumerated in [Plaintiff]'s Exhibit "O", the Defendants were employed by or did associate with a RICO Enterprise; namely the Confluenze Enterprise, and who were associated with in fact and engaged in, and affected, interstate and/or foreign commerce.

40.	All of the Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of the Confluenze Enterprise through a pattern of racketeering activities, all in violation of 18 U.S.C. §1961(1), (4), (5), (9), and §1962(c).

41.	From March 2009 to the present, all of the Defendants[,] in violation of 18 U.S.C. §1962(c), did cooperate jointly and severally in the commission of two or more of the RICO predicated [sic] acts that are stated in 18 U.S.C. §1961(1)(B); namely, the theft of confidential and proprietary business property and secrets of [Plaintiff] and a pattern of fraudulent dissemination for competitive use against [Plaintiff] through multiple acts of wire fraud (18 U.S.C.§1343) and engagement in monetary transactions in property derived from specified unlawful activity (18 U.S.C. §1957) through activities conducted while Guttridge and Bharathwaj were actually in the United States (see Exhibit "O").

42.	All of the Defendants, in violation of 18 U.S.C. §1962(c), did commit these predicate acts in a manner which they calculated, premeditated, and intentionally threaten [sic] to be an ongoing way of doing business such as to threaten an unbridled continuation of the acts violating 18 U.S.C. §1961(1)(B).

43.	[Plaintiff, its subsidiaries, and affiliates][3] ha[ve] suffered and continue[] to suffer damages including but not limited to, financial loss in an amount exceeding $75,000.00 (USD), loss of business opportunities, loss of business good will, damages to reputation, and loss of tangible and intangible property as an actual, direct, and proximate cause of, and resulting from, the aforementioned predicate acts as stated above and in Exhibit "O."

44.	As a result of [Plaintiff's, its subsidiaries' and affiliates]'s injuries by reason of the Defendants' violation of 18 U.S.C. §1962(c), the Defendants are liable to [Plaintiff] for treble damages in an amount to be determined by the trier of fact, costs of this suit, reasonable attorney's fees, and such other and further relief as this Court deems just and proper.

Amend. Compl. ¶¶ 38-44.

---

[3] In the amended complaint, Plaintiff uses the term "GVI" to refer to Plaintiff, its subsidiaries and affiliates. Amend. Compl. ¶ 1.

**DISCUSSION**

I.      **Civil RICO Claim**

A.      Standard for Motion to Dismiss

Defendants contend that Plaintiff has failed to state a plausible claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, and that this claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557). The court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006).

RICO "provides a private right of action for treble damages to '[a]ny person injured in his business or property by reason of a violation' of [RICO's] criminal prohibitions." *Bridge v. Phoenix Bond and Indem. Co.*, 553 U.S. 639, 641 (2008) (citing 18 U.S.C. § 1964(c)). The elements of a claim for the violation of the provisions of civil RICO are: 1) conduct [or predicate acts], 2) of an enterprise, 3) through a pattern, 4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex, Co.*, 473 U.S. 479, 496 (1985). In order to have standing to make a civil RICO claim, a plaintiff must 1) have been

injured in his business or property, 2) by the conduct constituting the RICO violation. *Id.*; *see also Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 337 n.6 (4th Cir. 1996) (noting that injury and causation are standing requirements). The Fourth Circuit requires proper allegations of injury and causation in order for a civil RICO claim to survive a motion to dismiss. *Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir. 1988), *overruled on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996).

B.    Predicate Acts

RICO defines "racketeering activity" as "any act or threat" involving listed state law crimes, such as murder, kidnaping, extortion and robbery, or an "act" indictable under specific listed federal statutes, such as wire fraud and money laundering. 18 U.S.C. § 1961(1).

1.    *Wire Fraud*

Defendants contend that Plaintiff has failed to properly allege the predicate act of wire fraud because wire fraud must be alleged with particularity.[4] Mot. to Dismiss at 4. Specifically,

---

[4] Defendants contend that the emails attached as exhibits to the amended complaint cannot be incorporated by reference to satisfy the particularity requirement. Mot. to Dismiss at 4, 13. Federal Rule of Civil Procedure 10(c), regarding adoption by reference, provides in relevant part: "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *Id.* Incorporation by reference under Rule 10(c) is required to be "direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation." *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446 (E.D. Va. 2009) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1326 (3d ed. 2004)). "This requirement of clarity ensures fairness to the responding party. . . ." *Id.* Exhibits that may be incorporated within the pleadings under Rule 10(c) include: "documentary evidence, specifically, contracts, notes, and other writings on which a party's action or defense is based." *Rose v. Bartle*, 871 F.2d 331, 340 n.3 (3d Cir. 1989) (internal citations omitted). "[L]engthy or numerous exhibits containing extraneous or evidentiary material should not be attached to the pleadings." 5 C. Wright & A. Miller, supra, § 1327, at 489. The Fourth Circuit has ruled that courts may consider documents attached to a complaint pursuant to Rule 10(c) in ruling on a motion to dismiss for failure to state a claim so long as the documents are "integral to the complaint and authentic." *Philips v. Pits County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Plaintiff directly and explicitly incorporates its exhibits into the amended complaint: Exhibit "A" is incorporated by ¶ 22, Exhibits "B" through "N" are incorporated by ¶ 35, and Exhibit "O" is incorporated by ¶¶ 29, 39, and 41. The exhibits consist largely of emails, which are documentary evidence and fall under Rule 10(c)'s definition of a writing. The court finds that the exhibits are integral to the allegations in the amended complaint of an ongoing fraudulent scheme to obtain investment capital for an enterprise at the expense of Plaintiff. With regard to authenticity, the amended complaint states, in relevant part:

Defendants argue that Plaintiff has failed to allege: 1) the content of any allegedly fraudulent misrepresentation; 2) sufficient facts to allow the court to conclude that any alleged misrepresentation was material; 3) how the alleged scheme deceived anyone; 4) how the alleged wire fraud furthered the scheme; and 5) what confidential information Defendants allegedly stole. *Id.* at 4, 13, 14; Def. Reply at 5.

To properly state the predicate act of wire fraud, Plaintiff must allege "1) a scheme to defraud and 2) the use of a wire communication in furtherance of that scheme." *United States v. Bollin*, 264 F.3d 391, 407 (4th Cir. 2001). "The scheme or artifice to defraud can be in the form of an assertion of a material falsehood with the intent to deceive or active concealment of a material fact with the intent to deceive." *United States v. Pasquantino*, 336 F.3d 321, 333 (4th Cir. 2003). "A false statement is material if it has a natural tendency to influence or is capable of influencing," the intended victim. *Neder v. United States*, 527 U.S. 1, 16, 24 (1999).

Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be pleaded with particularity. *Id.* Therefore, when wire fraud is an alleged predicate act in a civil RICO claim, the predicate act must be pleaded with particularity. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1138 (4th Cir. 1993).

The court finds that Plaintiff has pleaded wire fraud with sufficient particularity to satisfy

---

The summary title and date heading of each exhibit has been prepared by the undersigned counsel for reference only, and the text and content of these e-mails has been preserved and represented to the best of Plaintiff's knowledge and information. The content of the various Exhibits represents a limited selection of relevant e-mails and other material, and is not intended to represent or constitute all or necessarily an exact duplication of the form of the material as originally communicated.

*Id.* ¶ 35. Defendants view this statement as an admission that the exhibits are not authentic. The court, having reviewed the exhibits in their entirety, concludes that they have significant indicia of trustworthiness. The court will consider the exhibits as being incorporated by reference into the amended complaint.

Rule 9(b). With regard to a scheme to defraud, the amended complaint alleges both 1) assertions of material falsehood with intent to deceive and 2) active concealment of material facts with intent to deceive. First, paragraphs 34, 41, and 63 of the amended complaint sufficiently allege a scheme to defraud potential business investors by misappropriating Plaintiff's software and web-based technologies and representing these pieces of intellectual property as belonging to the Confluenze Enterprise. Paragraph 34 alleges that Guttridge and Bharathwaj "electronically communicated with a number of investors and business contacts of [Plaintiff] in order to fraudulently promote, conduct and participate in their Confluenze Enterprise, see Exhibit 'O,'. . . ." In paragraph 41, Plaintiff alleges that Defendants cooperated in "the theft of confidential and proprietary business property and secrets of [Plaintiff] and a pattern of fraudulent dissemination for competitive use against [Plaintiff] through multiple acts of wire fraud (18 U.S.C.§1343)." Paragraph 63 specifies that Plaintiff "holds title and/or the right to possession of certain intellectual properties including, but not limited to, software, web technologies, and/or web-based solutions and other products developed by Krish Krishnan," which constitute the intellectual property allegedly stolen.

Second, paragraphs 26, 29, 30, and 33 of the amended complaint allege a scheme to defraud Plaintiff by concealing the misappropriation of Plaintiff's intellectual property. In paragraphs 26, 29, and 33, Plaintiff alleges that Defendants, through the use of email communications, converted Plaintiff's finances, intellectual property, and corporate property to benefit their own enterprise, in competition with Plaintiff. In paragraph 30, Plaintiff alleges that Defendants "actively and intentionally concealed their communications, acts, misdeeds, and intentions from [Plaintiff]." In addition, the exhibits attached to the amended complaint evidence that Defendants were contacting potential investors and distributing business plans and software demos to the potential investors.

The emails, coupled with the allegation that intellectual property was misappropriated, identify the alleged scheme to defraud with sufficient particularity.

The "use of interstate wires" element of a wire fraud claim is alleged throughout the amended complaint. For example, paragraphs 28 and 34 allege that Defendants electronically communicated with each other regarding the scheme to defraud as well as with third parties in an attempt to obtain funding for their enterprise. *Id.* In addition, the exhibits incorporated into the amended complaint, which consist largely of emails, also allege the use of interstate wires.

Finally, the amended complaint alleges with sufficient particularity that the wire communications were in furtherance of the Confluenze Enterprise scheme. In paragraph 28 of the amended complaint, Plaintiff alleges that Guttridge and Bharathwaj used electronic communications to communicate with each other and potential investors "for the purpose of defrauding [Plaintiff] and . . . third-party individuals to enhance the Confluenze Enterprise for the monetary benefit of the Defendants to the detriment of [Plaintiff]." Paragraph 34 similarly alleges that Defendants "have electronically communicated with a number of investors and business contacts of [Plaintiff] in order to fraudulently promote, conduct and participate in [the] Confluenze Enterprise. . . ." Based on all of the foregoing, the court finds that Plaintiff has pleaded the predicate act of wire fraud with sufficient particularity.

### 2.    *Money Laundering*

Defendants contend that Plaintiff's allegation of money laundering is insufficient because it "does nothing more than parrot the relevant statutory elements without pleading any facts whatsoever." Mot. to Dismiss at 4. The court agrees.

To state a claim for money laundering, Plaintiff must allege that Defendants "knowingly

participated in a monetary transaction involving criminally derived proceeds." *United States v. Najjar*, 300 F.3d 466, 481 (4th Cir. 2002). The term "'monetary transaction' means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution. . . ." 18 U.S.C. § 1957(f)(1).

The relevant paragraphs of the amended complaint state:

28.   Throughout the course of the electronic communications and other collaboration between Guttridge and Bharathwaj, while both were still affiliated with and operating under fiduciary duties to [Plaintiff], Guttridge and Baharathwaj and the remaining Defendants by and through the actions of Guttridge, began to electronically communicate with third-party individuals and/or entities (including, but not limited to: Green Power Funding Group; John Cravenho; Power Management Concepts; Eduardo Browne; Carbon Trade Xchange; Steve Harrison; Carrie Howes; Proactive Investors; Sequoia Capital; Jeffrey Henslin; IBM PartnerWorld; and HughesNet) for the purpose of defrauding [Plaintiff] and these third-party individuals to enhance the Confluenze Enterprise for the monetary benefit of the Defendants to the detriment of [Plaintiff].

. . .

34.   Upon information and belief, Guttridge, while still a member of the Board of Directors of [Plaintiff], Bharathwaj, and the remaining Defendants by and through the actions of Guttridge, have electronically communicated with a number of investors and business contacts of [Plaintiff] in order to fraudulently promote, conduct and participate in their Confluenze Enterprise, see Exhibit "O," and these electronic communications and efforts have directly caused, and are continuing to cause, losses and other damages to the financial condition and reputation of [Plaintiff], and as part of the natural, ongoing and regular method of business for the Confluenze Enterprise, threaten the unbridled continuation of the Defendants' violation of 18 U.S.C. §1343, §1961(1)(b), and §1962(c).

. . .

41.   From March 2009 to the present, all of the Defendants in violation of 18 U.S.C. §1962(c), did cooperate jointly and severally in the commission of two or more of the RICO predicated acts that are stated in 18 U.S.C. §1961(1)(B); namely, the theft of confidential and proprietary business property and secrets of [Plaintiff] and a pattern of fraudulent dissemination

for competitive use against [Plaintiff] through multiple acts of wire fraud (18 U.S.C. §1343) and engagement in monetary transactions in property derived from specified unlawful activity (18 U.S.C. §1957) through activities conducted while Guttridge and Bharathwaj were actually in the United States (see Exhibit "O").

Plaintiff does not allege that Defendants actually obtained any funds as a result of their alleged scheme, and do not allege that a financial institution was involved. Plaintiff has not pointed the court to any other relevant paragraphs of the Amended Complaint. In addition, there is no information in the exhibits that Defendants ever received funding from investors or how such funds were transferred. Accordingly, Plaintiff has not sufficiently pleaded the predicate act of money laundering.

C.     Pattern of Racketeering Activity

Defendants contend that the predicate acts alleged by Plaintiff do not establish a pattern of racketeering activity as required by RICO. Mot. to Dismiss at 5. The court agrees.

To have a "pattern" of racketeering activity, two or more predicate acts must have been committed within a ten year period. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166 (4th Cir. 2002) (citing 18 U.S.C. § 1961(5)). Plaintiff has sufficiently alleged two or more predicate acts because it has alleged multiple instances of wire fraud. *See Al-Abood v. El-Shamari*, 217 F.3d 225 (4th Cir. 2000) ("it is possible for defendants to be guilty of RICO violations if they commit two or more acts of mail or wire fraud. . . ."). Two predicate acts, however, do not necessarily establish a pattern. *Sedima*, 473 U.S. at 497 n.14. In *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989), the Supreme Court found that "to prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Id.* at 239.

Predicate acts are related if they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, (quoting 18 U.S.C. § 3575(e)); *ePlus*, 313 F.3d at 181-82. The court finds that the multiple acts of wire fraud alleged by Plaintiff are related. The emails are alleged to have the common purpose of obtaining funds for the Confluenze Enterprise, and Guttridge and/or Bharathwaj are common participants in most of the emails.

Continuity requires "either [] a closed period of repeated conduct, or [] past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Closed-ended continuity may be established by a "series of related predicates extending over a substantial period of time." *Id.* at 242. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. . . ." *Id.* Open-ended continuity may be established where, for example, the "related predicates themselves involve a distinct threat of long-term racketeering activity," or where the predicate acts "are part of an ongoing entity's regular way of doing business . . . or of conducting or participating in an ongoing and legitimate RICO enterprise." *Id.* at 242-43. The continuity requirement of RICO is "not always easily applied and depend[s] on the facts of each particular case." *ePlus*, 313 F.3d at 182 (noting that the pattern requirement involves a "commonsensical, fact-specific inquiry").

In order for the continuity requirement to be met, the racketeering activity must have "scope and persistence [that] pose a special threat to social well-being." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). A single scheme may be sufficient to establish a pattern. *Parcoil Corp. v. NOWSCO Well Serv., Ltd.*, 887 F.2d 502, 503 (4th Cir. 1989). Courts must guard against turning ordinary business contract or fraud disputes into federal RICO claims because Congress

intended that "the heightened civil and criminal penalties of RICO [be] reserved for schemes whose scope and persistence set them above the routine." *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988); *see also ePlus*, 313 F.3d at 181 (noting that RICO pattern of racketeering requirements "are designed to prevent RICO's harsh sanctions, such as treble damages, from being applied to garden-variety fraud schemes"). For example, in *Flip Mortgage*, the Fourth Circuit found no pattern of racketeering activity when the alleged events involved a single scheme (the breach of a contract) perpetrated against a single victim over the period of seven years. The court found that the scheme did not involve the "sort of extended, widespread, or particularly dangerous pattern of racketeering which Congress intended to combat with federal penalties" because it involved such a narrow scope. *Id.* The Fourth Circuit noted that:

> a great many ordinary business disputes arising out of dishonest business practices or doubtful accounting methods, such as have until the present been redressed by state remedies, could be described as multiple individual instances of fraud, if one chose to do so. But to adopt such a characterization would transform every such dispute into a cause of action under RICO.

841 F.2d at 538 (internal citation omitted). In *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000), the Fourth Circuit again declined to find a sufficient pattern of racketeering activity to constitute a RICO claim in a case which was "essentially a dispute between formerly close family friends," and the "commonplace predicate acts" of mail and wire fraud did not warrant a claim under RICO. *Id.* at 238. The Fourth Circuit is "especially cautious" in allowing civil RICO claims to proceed "when the predicate acts involved are mail and wire fraud" because "'[i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice.'" *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (quoting *Internat'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 154-55 (4th Cir. 1987)).

The within action does not involve allegations sufficient to constitute a continuous pattern of racketeering activity under RICO. The allegations do not rise to the level of the "sort of extended, widespread, or particularly dangerous pattern of racketeering which Congress intended to combat with federal penalties." *See Flip Mortgage*, 841 F.2d at 538. The allegations in this case are that since 2008, Defendants have been misrepresenting Plaintiff's intellectual property as belonging to the Confluenze Enterprise for the purpose of obtaining investment funds for the start up of the Confluenze Enterprise. This is a routine intellectual property dispute involving the misappropriation of certain intellectual property for the purpose of starting a competing business. It does not rise to the level of a federal RICO claim involving a widespread or particularly dangerous pattern of racketeering.

In summary, although Plaintiff has sufficiently plead wire fraud, the court finds that Plaintiff has failed to state a proper civil RICO claim because it has not sufficiently alleged a pattern of racketeering activity. Plaintiff's RICO claim is therefore dismissed with prejudice. *See Ownby v. Cohen*, 194 F.3d 1305 (Table), 1999 WL 754053, at *1 (4th Cir. Sept 23, 1999) (affirming dismissal of a RICO claim with prejudice for failure to state a claim upon which relief can be granted).

## II. Personal Jurisdiction over Defendants as to Plaintiff's State Law Claims

Although the court has subject-matter jurisdiction in this case based upon diversity of citizenship, Defendants contend that without the RICO claim, there is no basis for the court to exercise personal jurisdiction over Defendants with regard to Plaintiff's state-law claims. Mot. To Dismiss at 22. Therefore, Defendants seek dismissal of Plaintiff's state law claims under Federal Rule of Civil Procedure 12(b)(2). Plaintiff did not respond to this argument on brief, but did not

concede the point at the hearing.[5]

Because this is a diversity case, the court must determine whether it has personal jurisdiction over Plaintiff's state law claims under the South Carolina long-arm statute. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause. *See S. Plastics Co. v. S. Commerce Bank*, 423 S.E.2d 128, 130 (S.C. 1992). As a result, "the personal jurisdiction analysis 'collapses into' the due process analysis." *Id.* (citing *Hardy v. Pioneer Parachute Co., Inc.*, 531 F.2d 193, 195 (4th Cir. 1976)).

Due process requires that a defendant have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" before a court exercises jurisdiction. *Nichols*, 991 F.2d at 1199 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). This prevents a defendant from being sued in a jurisdiction as a result of mere "random, fortuitous or attenuated contacts." *Eagle Aviation, Inc.*, 761 F. Supp. at 406-07. If a defendant's contacts with the forum state are continuous and systematic, a court can exercise general personal jurisdiction over the defendant regardless of whether the cause of action arose out of the defendant's contacts with the forum state. *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000). If a defendant's contacts with the forum state are not continuous and systematic, a court may still exercise specific personal jurisdiction if the cause of action is so related to the contacts such that there is a substantial connection between the cause of action and the forum. *Diamond Healthcare*, 229 F.3d at 450.

---

[5] Plaintiff contends that because it has stated a proper civil RICO claim, the court can exercise pendant personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2). Because the court has dismissed Plaintiff's civil RICO claim, Rule 4(k)(2) cannot be the basis for personal jurisdiction over Defendants.

A.     General Jurisdiction

To establish general jurisdiction, Defendants' activities in the forum must have been "continuous and systematic." *Diamond Healthcare of Ohio, Inc.*, 229 F.3d at 450; *see also Nichols*, 991 F.2d at 1199 (citing *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) ("For a court to exercise general jurisdiction, the requisite 'minimum contacts' between the defendant and the forum state are 'fairly extensive.'")).  Single or isolated activities are insufficient to subject a party to general personal jurisdiction.  *Nichols*, 991 F.2d at 1199 (citing *Int'l Shoe*, 326 U.S. at 317).  Even some continuous activity within the forum may not be sufficient to confer general personal jurisdiction over a party.  Only when the contacts are so substantial and of such a nature as to justify suit against the defendant on causes of action arising from dealings entirely distinct from the activities at issue may a court assert general personal jurisdiction.  *Nichols*, 991 F.2d at 1199 (internal citations omitted); *see also Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 510 (S.C. 2005).

Plaintiff admits that "Guttridge and Bharathwaj . . . have had limited contacts with South Carolina and rarely travel to the United States." Pl. Resp. at 19.  Moreover, Plaintiff does not argue and there is no evidence that that Innoven Partners, which is a foreign corporation, has continuous and systematic connections with South Carolina.  Thus, the court finds that there is no basis for the court to exercise general personal jurisdiction over Guttridge, Bharathwaj or Innoven Partners.

B.     Specific Jurisdiction

The Fourth Circuit has created a three-part test for determining whether the assertion of specific personal jurisdiction in a particular case comports with due process.  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).  Courts are to consider: "1) the extent

to which the defendant purposefully availed itself of the privilege of conducting activities in the State

[the 'purposeful availment' prong]; 2) whether the [plaintiff's] claims arise out of those activities

directed at the State; and 3) whether the exercise of personal jurisdiction would be constitutionally

reasonable [the fairness prong]." *Id.* (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293

F.3d 707, 712 (4th Cir. 2002)). This test is designed to protect a defendant from having to litigate

a suit in a forum where it should not have anticipated being sued. *See id.* at 277-78.

The first prong, or "purposeful availment" prong, of the specific personal jurisdiction test

rests on the basic premise that it is unfair to require a non-resident to defend himself in a forum when

he never purposefully availed himself of "the privilege of conducting activities within the forum,

thus never invoking the benefits and protections of its laws." *Foster v. Arletty 3 Sarl*, 278 F.3d 409,

415 (4th Cir. 2002) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Purposeful availment"

occurs where the non-resident's contacts with the forum state "proximately result from actions by

the [non-resident] himself that create a substantial connection with the forum []." *Lesnick v.

Hollingsworth & Vose Co.*, 35 F.3d 939, 942-43 (4th Cir. 1994). In determining whether

"purposeful availment" has occurred, courts have considered: 1) whether the defendant maintains

offices or agents in the forum state; 2) whether the defendant owns property in the forum state; 3)

whether the defendant reached into the forum state to solicit or initiate business; 4) whether the

defendant deliberately engaged in significant or long-term business activities in the forum state; 5)

whether the parties contractually agreed that the law of the forum state would govern disputes; 6)

whether the defendant made in-person contact with a resident of the forum in the forum state

regarding a business relationship; 7) the nature, quality and extent of the parties" communications

about the business being transacted; and 8) whether the performance of contractual duties was to

occur within the forum. *Consulting Engineers Corp.*, 561 F.3d at 278.

The only Defendant alleged to have any connection with South Carolina is Bharathwaj. Bharathwaj's actions in sending emails while on a business trip to South Carolina do not constitute a "substantial connection" with the forum. *Lesnick*, 35 F.3d at 942-43. Moreover, Bharathwaj's trip to South Carolina and the emails he sent during that trip cannot constitute purposeful availment of the privilege of conducting activities in South Carolina by Guttridge or Innoven Partners because these Defendants did not themselves take any actions directed at South Carolina.

The second prong of the specific personal jurisdiction test addresses whether Plaintiff's claims arise out of Bharathwaj's activities directed at the forum. Plaintiff's claims do not arise from activities directed at South Carolina by Bharathwaj. Bharathwaj's business trip to South Carolina was unrelated to the Confluenze Enterprise and Plaintiff does not contend that any emails sent by Bharathwaj on that trip were directed to persons within the state of South Carolina. Pl. Resp. at 21; *see also* Mot. to Dismiss at 8.

In applying the third prong, or fairness prong, of the specific personal jurisdiction test, courts should consider: 1) the burden on the defendant of litigating in the forum; 2) the interest of the forum in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the shared interest of the states in obtaining efficient resolution of disputes; and 5) the interests of the states in furthering substantive social policies. *Consulting Engineers Corp.,* 561 F.3d at 279.

In considering these factors, the court concludes that South Carolina is not an appropriate forum for Plaintiff to bring the within case against Bharathwaj. First, because Bharathwaj is a citizen of India, the burden of litigating this suit in South Carolina would be significant for Bharathwaj. Second, South Carolina has limited interest in litigating this suit because: 1) Plaintiff is a New York

corporation, 2) the Defendants are not citizens of South Carolina, and 3) the claims at issue did not arise in South Carolina.

Based upon the foregoing, the court does not have personal jurisdiction over Guttridge, Bharathwaj or Innoven Partners with regard to Plaintiff's state law claims. Thus, Plaintiff's state law claims are dismissed without prejudice under Rule 12(b)(2) as to Bharathwaj, Guttridge and Innoven Partners.[6]

## **CONCLUSION**

Defendants Guttridge, Bharathwaj and Innoven Partners's motion to dismiss Plaintiff's amended complaint (Entry 16) is **granted**. Plaintiff's civil RICO claim is dismissed with prejudice under Rule 12(b)(6), and Plaintiff's state law claims are dismissed without prejudice under Rule 12(b)(2) as to Defendants Guttridge, Bharathwaj, and Innoven Partners. Defendants' motion to dismiss the original complaint (Entry 8) is **terminated as moot**. Plaintiff is directed to inform the court, within ten (10) days of the entry of this order, whether it wishes to proceed against the sole remaining defendant, which has not yet been served.

---

[6] The court also concludes that this action requires dismissal under the doctrine of *forum non conveniens*. The doctrine of *forum non conveniens* has "continuing application in federal courts only in cases where the alternative forum is abroad. . . ." *Fidelity Bank PLC v. N. Fox Shipping N.V.*, 242 F. App'x 84, 90 (4th Cir. 2007). The determination of whether dismissal based on *forum non conveniens* is appropriate requires a two-step analysis. First, it must be determined "whether an alternative forum is available." In re *Compania Naviera Joanna S.A.*, 531 F. Supp. 2d 680, 684 (D.S.C. 2007) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981)). Second, if an alternative forum is available, "the court must apply various factors to determine whether the private litigants' interests and the public interest require dismissal." *Id.* (citing *Piper Aircraft Co.*, 454 U.S. at 257-61). An alternative forum is available because: 1) Innoven Partners and Guttridge are citizens of England and subject to its courts, 2) Bharathwaj will stipulate to personal jurisdiction in England, and 3) there are causes of action available to Plaintiff in the English court system. The private and public interest factors require dismissal in this case because: 1) if the case proceeds in England, fewer witnesses and parties will be obligated to travel long distances for the litigation, 2) there is little local interest in having the controversy decided in South Carolina indicating that a South Carolina jury should not be burdened with this case, and 3) South Carolina law will not be applied in this case.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
United States District Judge

December 1, 2010
Columbia, South Carolina